UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PATRICIA KENNEDY, Individually,

    Plaintiff,

    v.

Case No.: 6:17-cv-605-ORL-41-GJK

RHODA SOLANO aka RHODA SOLANO-BRENNAN and SOLANO ENTERPRISES, INC. d/b/a SUNSET CAFE,

    Defendants.

## DEFENDANTS' DISPOSITIVE MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, RHODA SOLANO aka RHODA SOLANO-BRENNAN and SOLANO ENTERPRISES, INC. d/b/a SUNSET CAFÉ ("Defendants"), by and through the undersigned counsel, pursuant to Rules 12(b)(1) of the Federal Rules of Civil Procedure and Rule 3.01 of the Rules of the United States District Court for the Middle District of Florida, files its Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum of Law, and states as follows:

## BACKGROUND

1. Plaintiff Patricia Kennedy ("Kennedy"), an Individual, filed a Complaint pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et. seq.* and Florida Accessibility Code

2. The basis of the lawsuit sought declaratory and injunctive relief based upon the allegations of certain "architectural barriers" that Plaintiff found at the Defendant's restaurant alleging discrimination on the basis of disability.

3. Subsequently, Plaintiff obtained the services of Square Feet Contractors, Inc. to perform what was deemed a "Remediation Accessibility Inspection Report" ("Report") at SUNSET CAFÉ.

4. The Report alleges certain violations at SUNSET CAFÉ and Mr. Herrera, who apparently performed the inspection, came to the conclusion that the alleged violations totaled $33,438.00.

5. The alleged amount of the damages or violations do not take into consideration whether they meet the readily achievable threshold, are technically feasible or cause an undue burden on SUNSET CAFÉ.

6. Additionally, the Report (as well as any of the filings of the Plaintiff) fails to identify which ADA standard is being implemented.

7. In response to the Plaintiff's Report, the Defendants produced their report completed by Interplan, LLC ("Interplan Report"). The Interplan Report identified areas of SUNSET CAFÉ that required improvement for SUNSET CAFÉ to achieve ADA compliance and specifically addressed those improvements that could be considered as readily achievable, technically feasible and would not place an undue burden on SUNSET CAFÉ.

8. Subsequently, the Defendants made the remedial improvements to SUNSET CAFÉ that were readily achievable, technically feasible and that would not place an undue burden on SUNSET CAFÉ.

9. An updated report was produced by Interplan, LLC dated August 28, 2017.

10. This updated report compared the previous remedial recommendations to the work that had been completed at SUNSET CAFÉ. The changes that were readily achievable, technically

feasible and that would not place an undue burden on SUNSET CAFÉ were made by the Defendants, as outlined in the updated report.

11.    Since the proper remediation's have been made and there is no reasonable expectation that the remediation's will be removed or that any prior alleged conduct will resume after this lawsuit is dismissed, the Plaintiff's complaint is now moot and must be dismissed as a matter of law.

## LEGAL STANDARD

When determining whether a party has standing to bring a federal claim, federal courts refer to Article III of the United States Constitution, which provides that only actual cases or controversies may be considered. Article III of the United States Constitution limits the jurisdiction of the federal courts to the consideration of cases and controversies. Mingkid v. U.S. Atty. Gen., 468 F. 3d 763, 768 (11th Cir. 2006).

Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, "facial" and "factual" attacks. Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motions. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits. Morrison v. Amway Corp., 323 F. 3d 920, 924 n.5 (11th Cir. 2003). When resolving a factual attack, the district court is "free to weigh the evidence and satisfy itself to the existence of its power to hear the case", Lawrence v. Dunbar, 919 F. 2d 1525, 1529 (11th Cir. 1990). Rule 12(b)(1) provides the proper framework for evaluating a motion to dismiss on grounds of mootness. Sheely v. MRI Radiology Network, P.A., 505 F. 3d 1173, 1182 (11th Cir. 2007).

A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. Fla. Ass'n of Rehab Facilities, Inc. v. State of Fla. Dept. of Health and Rehabilitative Services, 225 F. 3d 1208, 1216 (11th Cir. 2000). A case is moot if it no longer presents a live controversy that a court could grant relief to. Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla., 382 F. 3d 1276, 1282 (11th Cir. 2004). A Title III ADA claim alleging violations becomes moot if the alleged violations are corrected without a judicially-sanctioned change in the relationship between the parties. Buckhannon Bd. and Care Home v. West Va. Dept. of Health and Human Resources, 532 U.S. 598, 604 (2001). When a plaintiff fails to achieve a judicially-sanctioned change in the relationship between the parties, the plaintiff cannot be considered a prevailing party and is not entitled to an award of attorneys' fees. Id at 605; see also Dionne v. Floormasters Enterprises, Inc., WL 3189770 (11th Cir. July 28, 2011).

## MEMORANDUM OF LAW

**I.   Sunset Café has removed the architectural barriers that were readily achievable, technically feasible and that did not place an undue burden upon Sunset Café.**

SUNSET CAFÉ did not receive any type of pre-suit notice by the Plaintiff advising them of any alleged architectural barriers located on the premises that violated or allegedly violated Title III of the ADA. This is mainly because it is the *modis operandi* of this specific Plaintiff and her counsel to file suit first, then demand remediation along with paying a hefty claim of attorneys' fees for essentially filing boiler-plate shotgun pleadings that are so designated by their apparent lack of grammar and appropriate gender identification.

SUNSET CAFÉ received Plaintiff's "expert" report that allegedly outlined what they considered were architectural barriers and thus violations of Title III. Again, this was not provided pre-suit nor was SUNSET CAFÉ given a chance to make any changes prior to being sued. Once

SUNSET CAFÉ was properly noticed of potential architectural barriers at the restaurant, they engaged the services of Bemmie Eustas to conduct an inspection of the restaurant and provide a report. Subsequently, based upon the dueling reports, SUNSET CAFÉ went to great lengths, both in time and money, to make the changes to the restaurant that could have been or were readily achievable, technically feasible and that did not place an undue burden upon SUNSET CAFÉ. After this was accomplished, Ms. Eustas came back out to the restaurant and provided a follow-up report. See attached Declaration of Scott D. Widerman, which contains the updated report.

Further, the Plaintiff in this matter will not be able to demonstrate that SUNSET CAFÉ has any intention of removing any of the changes made that would take SUNSET CAFÉ out of compliance. Any allegation in a subsequent response by the Plaintiff to the contrary would be pure speculative, unsupported and unfounded.

Therefore, SUNSET CAFÉ has made the changes to the restaurant that could be or were readily achievable, technically feasible and that did not place an undue burden upon SUNSET CAFÉ. Although the Plaintiff will likely reiterate their footnote argument from their untimely Motion for Summary Judgment and Brief in Support (Doc. 22) that "Defendant's (sic) litigation strategy is to litigate this case aggressively, vexatious and frivolously and avail themselves (sic) of the resulting delay to hastily fix the violations at the property. Defendant's (sic) ultimate goal is to eventually claim to have mooted this case." (Footnote 1, Page 4, Doc. 22), this should not be an argument but a goal of the Plaintiff if indeed remediation was the ultimate result to be obtained. But as the Court can clearly interpret from this argument, if SUNSET CAFÉ does make the changes to the restaurant and come into compliance with Title III, if in fact they ever were not in compliance based on the law including exemptions thereto, then the actual case is moot and Plaintiff will not be entitled to an award of fees. This entitlement to an award of attorneys' fees,

by their email correspondence over the time period of the litigation first requesting fees and then addressing remediation time periods, appears to be their only real concern. The Plaintiff should applaud SUNSET CAFÉ for hastily making changes to the restaurant, not try to make them out to be a villain before this Court. Such behavior is completely and utterly transparent and this Court should not reward such contradictory and intentionally irreverent behavior that is actually contrary to the federal law they purport to uphold.

Based on the forgoing, Plaintiff's Complaint (Doc. 1) should be rendered moot and dismissed, the Plaintiff taking nothing from this action.

## II.     Due to the removal of the architectural barriers that were readily achievable, technically feasible and that did not place an undue burden on Sunset Café, Plaintiff's Complaint is now moot

In this instant case, since SUNSET CAFÉ did not receive any type of pre-suit notice or demand to advise SUNSET CAFÉ they were not in compliance with Title III of the ADA or given a chance to become compliant prior to being sued by the overly litigious Plaintiff, SUNSET CAFÉ has gone to great lengths during this lawsuit to ensure they are in fact compliant with Title III of the ADA. Although the Plaintiff has and will continue to argue this is improper and does not extinguish their claim, the following cases direct this Court otherwise.

In the matter of National Alliance for Accessibility, Inc. v. Walgreen Co., 2011 WL 5975809 (M.D. Fla. 2011), Walgreens was sued for certain ADA violations that included, but were not limited to, parking spaces, entrance access, paths of travel and restroom facilities, that were alleged to cause architectural barriers to the disabled. Walgreens was not notified pre-suit of any violations, they were simply sued by the Plaintiff. Walgreens then hired a consultant to assist them to bring their store in compliance. After making the necessary repairs, Walgreen's consultant found they addressed the violations and were now ADA compliant. The Plaintiff, of course, continued to

argue that the issue was not moot and that they were entitled to their attorneys' fees. The Court, having reviewed the arguments of both parties, stated "In a number of cases, however, '[f]ederal courts have dismissed ADA claims as moot when the alleged violations have been remedied after the initial filing of a suit seeking injunctive relief", *at* n.3. The Court went on to say "These courts have generally found that the 'alleged discrimination cannot reasonably be expected to recur because 'structural modifications are unlikely to be altered in the future'". In reviewing the changes made versus the allegations of Plaintiff's complaint and the applicable law, the Court held that the case was moot and more importantly, that "Plaintiff's claims for attorneys' fees and costs must also be denied. Plaintiffs have obtained no favorable ruling, and under Title III of the ADA, Plaintiff's 'cannot…recover their attorneys' fees for serving as a 'catalyst,', i.e., that they caused [defendant] to implement the changes they sought." (citing to Am. Ass'n of People with Disabilities v. Harris, 605 F. 3d 1124, 1137 n. 26 (11th Cir. 2010)).

Similarly, in Harty v. North Lauderdale Supermarket, Inc., 2015 WL 1638590 (S.D. Fla. 2015), North Lauderdale Supermarket was sued under alleged Title III ADA violations which included, but were not limited to, tables and seating not providing the required clearance, accessibility in the restrooms, insulated lavatory pipes and an improper paper towel dispenser. In response to the complaint that was served without notice, North Lauderdale Supermarket engaged a consultant to evaluate the store. The consultant identified repairs and changes that would improve accessibility and upon his last visit determined that the accessibility challenges presented in the complaint no longer existed.

The Court, reviewing the case under the voluntary-cessation doctrine, evaluated the facts by using three factors: 1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; 2) whether the defendant's cessation of the offending

conduct was motivated by a genuine change of heart or timed to anticipate suit; and 3) whether, in ceasing the conduct, the defendant has acknowledged liability. *See* Sheely, 505 F. 3d at 1184. However, the court acknowledged that ADA cases based on allegations of architectural barriers are a unique type of voluntary-cessation doctrine cases. This is because it cannot be reasonably expected that a now ADA compliant defendant would remove or undo what has been done to accomplish compliance. The court in Houston v. 7-Eleven, Inc., 2014 WL 351970 (S.D. Fla. Jan. 31, 2014) put it best when they said: "The essential question that must be answered under the voluntary-cessation doctrine is simple: Is it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." At *4.

In this instant matter, SUNSET CAFÉ has made significant changes to the restaurant and altered its appearance inside and out to permanently remediate the architectural barriers identified by Plaintiff and Plaintiff's expert, regardless of any of Plaintiff's allegations actually being determined as true, that were readily achievable, technically feasible and that would not cause an undue burden. See Affidavit of Jason Solano as Exhibit "A". It is unreasonable to think that SUNSET CAFÉ would remove the improvements made to the restaurant or violate the Title III of the ADA after this case is dismissed or continue to operate in a way that would invite another lawsuit by this litigious Plaintiff or any other "tester".

Therefore, based upon the above, SUNSET CAFÉ respectfully requests this Court find Plaintiff's Complaint (Doc. 1) moot and dismiss same, and Plaintiff take nothing from this matter.

## **CONCLUSION**

Although the Plaintiff has and will continue to preach Title III legislation, which SUNSET CAFÉ completely agrees is not only needed but beneficial to society as a whole, it is the absurdity

of the way that the Plaintiff has turned this legislation on its head and made a mockery of the judicial system all in the name of attorneys' fees that should shock the conscience of this Court.

This litigious Plaintiff may appear to have an altruistic reason for becoming a "tester" and traveling the state to identify those businesses that are out of compliance with Title III, but the exercise of implementation in this case and the hundred others filed by her and her attorneys show the true meaning behind the reason: attorneys' fees. Again, if the true intention of the Plaintiff were to have ADA compliant businesses, then proper notice and an opportunity to become compliant would be the *modis operandi* of the day. I would submit to the Court that many businesses would work to become compliant to avoid a lawsuit and costly litigation. However, when a "tester" comes to a place of business for the sole purpose of finding violations, takes pictures, sends that information to their hired expert, and then automatically contacts their attorneys that up with an instant lawsuit and demand of attorneys' fees, followed secondary with a plan to remediate, the Court should and must look at these cases for what they are.

With that being said, SUNSET CAFÉ has gone to great lengths considering both time and money to not only defend this lawsuit but to make changes to the restaurant that were readily achievable, technically feasible and that did not place an undue burden upon them in an abundance of caution to ensure all aspects of the ADA are followed. SUNSET CAFÉ submits this has been accomplished as evidenced by the updated report of Bemmie Eustas. Again, the Plaintiff should applaud SUNSET CAFÉ for their actions in this matter and the time frame in which these actions were accomplished. But it will not surprise the undersigned that after this motion is filed the Plaintiff fires back with another vexatious brief in opposition, scolding the Defendants for their actions.

Respectfully, the Defendants request this Court find Plaintiff's Complaint (Doc. 1) moot and dismiss, finding Plaintiff takes nothing from this action.

Dated: December 18, 2017.

Respectfully submitted,

___/s/ Scott D. Widerman_____
Scott D. Widerman, Esq.
Florida Bar No. 0585823
Eric L. Hostetler, Esq.
Florida Bar No. 0554839
**WIDERMAN MALEK, PL**
1990 W. New Haven Avenue, Suite 201
Melbourne, Florida 32904
Telephone:  321-255-2332
Facsimile:  321-255-2351
Scott@USLegalTeam.com
**Attorney for Defendants**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 18, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system.  I further certify that the foregoing document is being served this date on all counsel of record or *pro se* parties on the Service List below, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

___/s/ Scott D. Widerman_____
Scott D. Widerman
