**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

PATRICIA KENNEDY, Individually,     :
    :
         Plaintiff,     :
    :
v.     :      Case No. 6:17-cv-00605-CEM-GJK
    :
RHODA SOLANO,     :
    :
         Defendant.     :
_____ / :
    :

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY FEES AND COSTS

Plaintiff, by and through undersigned counsel, hereby files the instant Memorandum In Opposition To Defendant's Motion For Attorney Fees And Costs. As set forth below, Defendant is not entitled to fees and costs because it is not the "prevailing party" in this action. Rather, this Court ruled that Plaintiff lacked standing. This is a dismissal on jurisdictional grounds which does not render Defendant the "prevailing party". Furthermore, Defendant is not entitled to attorney fees or costs under the Christiansburg doctrine because Plaintiff never acted unreasonably, frivolously, or without foundation in the prosecution of this matter. Moreover, as set forth below, none of the expenses sought by Defendant fall within the narrow definition of "costs".

## BACKGROUND

Plaintiff commenced the instant action for injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"), for removal of

barriers to access which discriminated against her on the basis of her disability.  The respective

ADA violations were enumerated in paragraph 10 of Plaintiffs' Complaint. Rather than admit

that these violations exist, Defendant filed a motion to dismiss and proceeded to litigate this case

aggressively, with a complete lack of civility and with repeated hostility.

At an early point during the course of this litigation, Defendant and its counsel obviously

became aware that the property was riddled with discriminatory violations because they engaged

in an aggressive litigation strategy and used the delay to hastily attempt to fix the violations.

### A.  DEFENDANT IS NOT A "PREVAILING PARTY"

Under several recent court opinions, a defendant in these circumstances is not entitled to

its fees or costs.  Under applicable case law, attorney fees and costs may be awarded to a

defendant if it is (1) a prevailing party **AND** (2) where the plaintiff's case was "frivolous,

unreasonable or without foundation."  Access 4 All, Inc. v. Partners of Kings Point, LTD., Case

No. 10-80779, DE 91 (S.D. Fla. March 8, 2012)(Exhibit A attached hereto) quoting

Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978) and Bruce v. City of

Gainesville, Georgia, 177 F.3d 949, 951-52 (11th Cir. 1999).

Defendant's Motion would have this Court overlook the first requirement, namely that

the Defendant is the "prevailing party".

In Partners of Kings Point, Ltd., the court had previously granted the defendant's motion

to dismiss, holding that the plaintiff lacked standing to sue.  The defendant moved for its attorney

fees and costs.  In a well-reasoned analysis, the United States District Court For The Southern

District Of Florida ruled that the defendant was entitled to neither.  The Court reasoned that such

may only be awarded to a defendant if it is a "prevailing party".  In cases where a defendant

2

succeeds in getting a case dismissed on the basis of lack of standing, it is NOT a "prevailing party".  Slip Op. 2-4.  The Court cited several reasons.

First, the Supreme Court had defined "prevailing party" in civil rights contexts in Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources, 532 U.S. 598, 603-04 (2002).  This requires that such a party had obtained either an enforceable judgment or court ordered consent decree.  Slip. Op. At 2-3.  In other words, the result must be a "material alteration of the legal relationship of the parties..."  Where a case is dismissed for lack of jurisdiction, there is no such "material alteration of the legal relationship" and, therefore, the defendant is not a "prevailing party".  Id. At 3.  According to the court, "[a] dismissal for lack of standing is not the functional equivalent of either a judgment on the merits or a court-ordered consent decree, such that it would entitle a defendant to an award of costs and fees as a prevailing party under the ADA."  Id. at 3.

The Partners of Kings Point court further noted that under Fed. R. Civ. P. 41(b), all dismissals operate as judgments on the merits "except dismissals for lack of jurisdiction..."  Id. at 3.  For this reason, the Southern District Court held that a defendant is not entitled to its costs.

A similar holding was recently issued by the United States District Court For The Western District Of North Carolina in National Alliance For Accessibility, Inc. And Denise Payne v. Bhuna Corp., Case No. 1:11-cv-79, DE 34 (W.D. N.C. April 10, 2012)(Exhibit B attached hereto).  In Bhuna, a North Carolina federal court dismissed a Title III ADA case on the grounds that the plaintiff  lacked standing.  Again, the defendant moved for its attorney fees, and the analysis was the same.  Before the Christiansburg standard was even to be addressed, the court must first address the threshold issue of whether the defendant was the "prevailing party".

"Simply because the Court granted [defendant's] motion to dismiss for lack of standing does not necessarily render Defendant a prevailing party."  Slip. Op. At 3.  See also Jeffrey Joel Judy v. Pingue, Case No. 2:08-cv-859, DE 42, p. 9 fn. 1 (S.D. Oh. Nov. 25, 2009)(Exhibit C attached hereto)(although ADA case dismissed for lack of standing, "Court is not aware of any grounds for shifting costs" to defendant).

Similarly, the United States District Court For The Middle District Of Florida ruled that:

> Before engaging in an analysis of whether the heightened Christiansburg standard imposed on prevailing defendants has been met by the City's motion for attorney's fees, the threshold question of whether the City is a prevailing party must be addressed. It is axiomatic that there must be a judicial determination on the merits in order for there to be a prevailing party. Marquart v. Lodge 837, Int'l Ass'n of Machinists and Aerospace Workers, 26 F.3d 842, 852 (8th Cir.1994) ("To obtain prevailing party status, a defendant must be able to point to a judicial declaration to its benefit."). Several courts have held that a defendant cannot be a prevailing party when the complaint is dismissed or disposed of for lack of jurisdiction, subject matter or otherwise. See Keene Corp. v. Cass, 908 F.2d 293, 298 (8th Cir.1990) ( "Where a complaint has been dismissed for lack of subject matter jurisdiction, the defendant has not 'prevailed' over the plaintiff on any issue central to the merits of the litigation." (internal quotation marks and citation omitted)); Daugherty v. Westminster Sch., Inc., 174 F.R.D. 118, 121–22 (N.D.Ga.1997) (noting that a defendant may not recover attorney's fees under a fee-shifting statute on a claim dismissed for lack of subject matter jurisdiction "even when one could conclude that summary judgment would have been granted [in defendant's favor] had jurisdiction been present"); Sellers v. Local 1598, Dist. Council 88, American Federation of State, etc., 614 F.Supp. 141, 143 (E.D.Pa.1985) (A "defendant cannot be said to have 'prevailed' on an issue which evaporated prior to the court addressing it.").

Davis v. Jackson, 776 F.Supp.2d 1314, 1317 (M.D.Fla.,2011)(holding that dismissal for lack of standing under Clean Water Act did not render defendant "prevailing party")[1].

---

[1]Although one Middle District of Florida Court awarded "costs" to a defendant in Norkunas v. Seahorse NB, LLC., Case No. 3:09-cv-934, DE 79 (M.D. Fla. Feb. 21, 2012); the Court gave no reasoning or analysis as to why.  In Seahorse, the court denied the prevailing defendant's motion for attorney fees.  The Court's decision and order preceded the better reasoned opinions set out in Partners Of Kings Point and Bhuna.  The Court's opinion did not

4

In the case at bar, the Court ruled against Plaintiffs on jurisdictional grounds.  This ruling

disposed of Plaintiffs' case in its entirety. Because the Court ruled that Plaintiff lacks standing,

this holding essentially operated to divest the Court of jurisdiction.  Therefore, Defendant fails to

meet the threshold requirement for entitlement to attorney fees and costs because it is not the

"prevailing party".

## B.  THE LAW STRONGLY DISFAVORS ATTORNEY FEE AWARDS TO CIVIL RIGHTS DEFENDANTS

Under fee shifting civil rights statutes, prevailing plaintiffs must be awarded their

reasonable attorney fees absent special circumstances. Hensley v. Eckerhart, 461 U.S. 424

(1983); Blanchard v. Bergeron, 498 U.S. 87 (1989); Dowdell v. City of Apopka, Florida, 698

F.2d 1181 (11th Cir. 1983); Johnson v. State of Mississippi, 606 F.2d 635 (5th Cir. 1979).

The purpose of fee shifting provisions in civil rights statutes is two-fold. On the one hand,

it is to encourage litigation by aggrieved victims of discrimination to act as "private attorney

generals". On the other hand, it serves the purpose of punishing violators and encourages

voluntary compliance with the law. In Young v. New Process Steel, LP, 419 F.3d 1201, 1205

(11th Cir. 2005), the Eleventh Circuit said the following of Congress' inclusion of fee shifting

provisions in civil rights statutes:

> "And the same policy reasons are at play in both contexts. The reason that
> attorney's fees are awarded to successful plaintiffs as a matter of course where §
> 1988 applies is that in civil rights cases plaintiffs are "the chosen instrument of
> Congress." Christiansburg, 434 U.S. at 418, 98 S.Ct. at 699. Congress has decided

---

address the threshold issue of whether the respective defendant therein had been the 'prevailing party'.  Moreover, in the Seahorse case, a full trial on the merits was held which resulted in a Court opinion that, to significant extent, held that various conditions at issue were not violations in the first place.  Thus, the Seahorse opinion can be said to have at least partial basis on the merits in addition to a jurisdictional ruling.

5

to implement its civil rights laws by effectively deputizing individuals to act as "private attorney general[s]" while they pursue their own interests as plaintiffs. Newman v. Piggie Park Enter., Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). *Reimbursing successful plaintiffs for the cost of their attorneys out of the losing defendants' pockets serves a dual function: it provides an incentive for bringing the lawsuits, and it adds to the costs of those who violate the civil rights of others.* Id.; Christiansburg, 434 U.S. at 418-19, 98 S.Ct. at 699." (Emphasis added.)

See also. Hensley v. Eckerhart, 461 U.S. 424, 445(1983)("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.");Texas State Teachers Assoc., v. Garland Independent School Dist., 489 U.S. 782, 791 (1989)(noting "private attorney general" doctrine served in fee shifting civil rights statute, thus entitling plaintiffs to attorney fees);   Alliance For ADA Compliance, Inc. v. Har-Gon Enterprises, Inc., No. 99-11703, slip op. at 3 (11th Cir. 2000)("The enforcement of civil rights statutes by plaintiffs as private attorneys general is an important part of the underlying policy behind the [ADA]"); Bruce v. City of Gainesville, 177 F.3d 949, 952 (11th Cir. 1999); Mallory v. Harkness, 923 F.Supp 1546, 1551 (S.D. Fla. 1996)("Congress intended Section 1988 to prompt plaintiffs to act as citizen enforcers or private attorneys general advancing our nation civil rights objectives and vindicating the liberty of all citizens.").

The Department of Justice, which is charged with enforcement of the ADA, has itself stated that: "[t]he federal government also depends heavily on 'private attorneys general' to supplement its enforcement efforts under Title II and other civil rights statues. [citations omitted.] The United States thus has a strong interest in ensuring that discrimination victims can obtain complete relief for their injuries through private litigation."  Amicus Curiae Brief submitted in Tyler v. City of Manhattan, Kansas, No. 94-3344, pp. 7-8 (D. Kansas).

In Equal Rights Center v. Abercrombie & Fitch Co., 1:09-cv-3157, DE 38 (D. MD July

2010), the DOJ stated:

> "Private plaintiffs play an important role in enforcing the ADA, particularly in the area of public accommodations. *See* 42 U.S.C. § 12188(a)(1). The United States cannot investigate every place of public accommodation in the country to determine if it is in compliance with the ADA. Effective enforcement of title III, therefore, depends upon a combination of suits by the United States and litigation by private plaintiffs who are aware of and encounter violations in their local communities. The United States therefore has a strong interest in ensuring that the standing of private plaintiffs to sue under title III is not unduly restricted."

In Dowdell v. City of Apopka, Florida, 698 F.2d 1181 (11th Cir. 1983), the Eleventh

Circuit held that its purpose is to ensure effective enforcement of civil rights laws, by making it

financially feasible to litigate civil rights violations. "Civil rights law depends heavily on private

enforcement. Moreover, the inclusion of penalties and damages is the driving force that

facilitates voluntary compliance with the ADA." Parr v. L & L Drive-Inn Restaurant, 96

F.Supp.2d 1065, 1082 (D. Hawaii 2000). Courts have noted: "As a result, most ADA suits are

brought by a small number of private plaintiffs who view themselves as champions of the

disabled. For the ADA to yield its promise of equal access for the disabled, it may indeed be

necessary and desirable for committed individuals to bring serial litigation advancing the time

when public accommodations will be compliant with the ADA." Molski v. Evergreen Dynasty

Corp., 500 F.3d 1047, 1062 (9th Cir. 2007); D'Lil v. Best Western Encina Lodge & Suites, 538

F.3d 1031, 1040 (9th Cir. 2008).

In civil rights cases where the applicable statute awards attorney fees to the "prevailing

party", the Supreme Court decision set forth in Christiansburg Garment v. E.E.O.C., 434 U.S.

412, 422-22 (1978)[2] establishes the governing standard over whether a losing plaintiff is

responsible for the defendant's fees.  There, the Supreme Court held that a defendant is not

entitled to its fees as a "prevailing party" merely because it has won and the plaintiff has lost.

Rather, a "meritless" plaintiff's case must mean groundless or the district court must hold that the

plaintiff's action was "frivolous, unreasonable, or without foundation."  Id.

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

See also Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human

Resources, 532 U.S. 598, 635 (2001)(citing Christiansburg); Angiolillo v. Collier County, 394

Fed. Appx. 609, 614 (11th Cir. 2010).

In determining whether fees should be awarded to prevailing defendants under the

Christiansburg doctrine, the Eleventh Circuit held that the following standard applies:

> In reviewing frivolity determinations, we view the evidence in the light most favorable to the plaintiff. Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1179 (11th Cir. 2005)[3]. We have held that three factors are important in determining whether a claim was frivolous: "(1) whether the plaintiff established a prima facie case; (2)

---

[2]The Christiansburg Doctrine applies to the ADA.  Martin v. California Dept. Of Veterans Affairs, 560 F.3d 1042 1052 (9th Cir. 2009); Bruce v. City of Gainesville, 177 F.3d 949, 951-52 (11th Cir. 1999); Hodges v. Publix Super Markets, Inc., 372 Fed. Appx. 74, 77 (11th Cir. 2010).

[3]In Cordoba, 419 F.3d at 1181, the Eleventh Circuit held that even an "exceedingly weak" case did not qualify as frivolous under the Christiansburg doctrine.

> whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." Sullivan v. Sch. Bd. of Pinellas County, 773 F.2d 1182, 1189 (11th Cir.1985). These factors, however, are only general guidelines, and frivolity determinations must be made on a case-by-case basis. Quintana, 414 F.3d at 1309.

Lawver v. Hillcrest Hospice, Inc. 300 Fed. Appx. 768, 773 (11th Cir. 2008).

Under Christiansburg, a plaintiff must simply establish a credible claim, not a successful one. EEOC v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993). The Eleventh Circuit has held that a losing plaintiff is not liable for the defendant's fees even where his claim was "exceedingly weak" or based on speculation.  In Lawver, the Court held:

> Attorney's fees are inappropriate when the plaintiff's claims are meritorious enough to receive careful attention and review. Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1559 (11th Cir.1995). A plaintiff does not proceed frivolously when her case is based solely on speculation, as long as the speculation is reasonable. Cordoba, 419 F.3d at 1181 (addressing attorney's fees in an ADA case).

300 Fed. Appx. At 774.

In Access For The Disabled, Inc. v. First Resort, Inc., 8:11-cv-2342, DE 73 ((M.D. Fla. 10/17/2012) Exhibit H attached hereto, Judge Moody applied the above analysis and rejected a prevailing defendant's claims for fees.

To summarize, the law is clear that civil rights plaintiffs are not liable for a defendant's fees and costs unless their case was frivolous.  Weak and speculative cases are insufficient grounds to award fees or costs.

The case at bar falls far short of the "frivolousness" or complete lack of merit required in Christiansburg.

In the case at bar, the Plaintiff had been to the cocoa beach area more than 50 times, including at least 9 times in the previous months, and continued to visit the area.  Plaintiff's

9

Affidavit, DE 16-1, para. 2. She visited Defendant's place of public accommodation and found it riddled with ADA violations. Id. Para. 4 and accompanying photos. She visited the facility once prior to the action and again afterward, having stated that she intended to return in the near future. Id.

While this Court disagreed on Plaintiff's position regarding standing, it cannot be said that Plaintiff's action was unreasonable or frivolous or without foundation. To the contrary, Plaintiff had ample authorities on every point to support the merits of her claim. She intended to return in the near future. Under Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335 (11th Cir. 2013), this is sufficient. Plaintiff did in fact return to the premises, which is also sufficient under Marod, 733 F.3d at 1336. Indeed, several courts, including the Eleventh Circuit, have recognized that a plaintiff's post complaint return to the property is sufficient to confer standing. In Sheely v. MRI Radiology Network, Inc., 505 F.3d 1173, 1189 (11th. Cir. 2007), the defendant argued that the plaintiff lacked standing because she had visited the property only once when the incident giving rise to the cause of action arose. The Eleventh Circuit held that the plaintiff had standing, basing its decision at least in part on the fact that the plaintiff had visited the facility subsequently in the period prior to giving her deposition testimony. This included revisits subsequent to the filing of the complaint. In Kennedy v. Omega Gas, 9:17-cv-80103-RLR, DE 60, pp. 6-7 (S.D. Fla. 8/30/17), Exhibit D, it was held that a plaintiff's revisit to the property after the filing of the complaint persuaded the court that plaintiff had sufficient standing to press her claims. See also Payne v. Boston Market Corp., E.D. N.C. 5:12-cv-354, DE 16 (3/12/13) Exhibit E (holding that plaintiff established standing by returning to the property after suit was filed).

Moreover, under the express language of the ADA, it is not necessary for a plaintiff to

visit a property more than once when they encounter discrimination. 42 U.S.C. Section 12188

provides, in relevant part: "Nothing in this section shall require a person with a disability to

engage in a futile gesture if such person has actual notice that a person or organization covered

by this subchapter does not intend to comply with its provisions."

In Marod, the Eleventh Circuit held that frequency of travel is a factor. 733 F.3d at 1327.

Plaintiff's 50 visits to the area should have been sufficient to establish a likelihood that she

would return. While Marod held that no one of the four factors is dispositive, this Court's

emphasis on the distance between Plaintiff's home and the tourist town of Cocoa Beach as

essentially outweighing Plaintiff's frequency of travel made this distance the dispositive factor.

Plaintiff also presented a good faith challenge to the Proximity Test itself, as being overly

narrow and ignoring express language of the Statute that warrant a finding of ongoing and

continuous injury.  At least some courts hold that a plaintiff who is aware of violations at a

property have continuing injury in fact.  See, e.g.  Betancourt v. Ingram Park Mall, L.P.,  735

F.Supp.2d 587 (W.D.Tex.2010)(deprivation of the equality of opportunity is an ongoing injury).

Other courts have held that segregation is a cognizable injury under the ADA. Helen v. DiDario,

46 F.3d 325, 333 n. 25 (3rd Cir. 1995).  See also Chaffin v. Kansas State Fair Board, 348 F.3d

850, 858 (2003)(noting that Congress specifically identified segregation as a form of prohibited

discrimination); Mark H. v. Lemahieu, 513 F.3d 922 (9th Cir. 2008)(recognizing that the ADA

prohibits segregation of disabled students in schools); Fisher v. Oklahoma Health Care

Authority, 335 F.3d 1175 (10th Cir. 2003)(segregation of disabled individuals in institutions is

prohibited by ADA).

It therefore cannot be said that the Plaintiff's case was so lacking in foundation or merit

as to warrant an award of fees to Defendant. To the contrary, at all times hereto, Plaintiff had ample caselaw and legal authorities to support the prosecution of her claims on every point. Indeed, the ADA was intended to confer civil rights equal to other civil rights statutes.  See The Equal Rights Center v. AvalonBay Communities, Inc., 2009 WL 1153397, at *7 (D. Md. 2009), citing H.R.Rep. No. 101–485, pt. 3, at 66 (1990), as reprinted in 1990 U.S.C.C.A.N. 445, 489. It is shocking that a disabled person can visit Cocoa Beach 50 times and still have no right to sue for discrimination, making the ADA far inferior to any other civil rights laws. However, the fact that this Court ruled against her on these arguments does not rise to the level required for an award of fees under Christiansburg.

### C.    DEFENDANT'S CLAIM THAT IT MADE SETTLEMENT OFFERS IS DISINGENUOUS

Defendant claims that it made settlement offers. This is entirely disingenous.  To the contrary, Defendant never made any good faith offers and instead held any resolution hostage to the requirement that Plaintiff concede to Defendant's fee offer, which started out paltry and actually diminished as the case wore on.

Other than Goodman v. Tatton Enters., 10-cv-60624, 2012 U.S. Dist Lexis 189060 (S.D. Fla. June 1, 2012), Defendant cites no authority granting fees to a prevailing defendant. The Defendant's reliance on the Goodman case is unavailing.  Indeed, the Defendant and Defendant's attorney are guilty of engaging in the conduct that was sanctioned by the Goodman court. In Goodman, the court found that the defendant had offered to settle the case on the merits and offered to pay the plaintiff's reasonable fees, but that the plaintiff's attorney had refused and conditioned any settlement on the defendant agreeing to pay the plaintiff's demanded fees. Id. At *91. The court noted that "At that point, the case should have ended, leaving only, if necessary,

the attorney's fees to be determined by the Court. Id. *97. In other words, the basis for the

sanction was the plaintiff's attorney's refusal to settle on the merits unless the defendant also

agree to the fee amount. There, the court held that: "In a case such as this one, the issue of

attorney's fees is separate from and ancillary and collateral to the substantive merits of the matter.

Id. At *94, citing White v. N.H. Dep't of Employment Sec., 455 U.S. 445, 451-52 (1982);

Budinich v. Becton Dickinson and Co., 486 U.S. 196, 199-202 (1988) ("As a general matter, at

least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action

to which the fees pertain.")

   The instant case stands in stark contrast to Goodman. In Goodman, the plaintiff's counsel

counsel was sanctioned because he refused to settle on the merits unless the defendant agree on

the fee amount. The exact opposite is true here. In the instant case, Plaintiff's attorney made

repeated offers to settle this case on the merits and let the court decide the amount of fees if the

parties were unable to do so. A copy of the various email correspondences exchanged between

counsel on this issue is attached as Composite Exhibit F. This offer was made on (1) April 25,

2017, Ex. F, p. 1("Or in the event your client does not agree to the amount of fees we propose,

but is willing to enter into a settlement agreement to make the property ADA compliant, we are

willing to let the court determine the amount of fees."); (2) May 22, 2017, Ex. F, p. 3 ("If,

however, we are not able to agree on the fees, the parties can enter into a consent decree in which

you agree to fix the ADA violations within 1 year of filing, contingent on the court's retention of

jurisdiction to enforce."; (3) May 24, 2017, Ex. F, p. 4 ("...would entertain a counteroffer, but if,

however, we are unable to agree on fees, we can have the court decide those fees..."); (4) June

22, 2017 11:23 am, Ex. F, p. 5 ("If you are not in agreement with the fees, we can still extend the

time to remediate to 1 year but ask the court to determine our fees and enter into a consent decree

to have the court retain jurisdiction to enforce."); (5) June 22, 2017, 1:37 pm, Ex. F, p. 12 ("... or,

if we cannot reach a fee agreement, we can have the court determine..."); (6) June 22, 2017 3:06

pm, Ex. F, p. 13 ("We can agree on the fixes but if the fees are something we cannot agree on,

then the court can determine the fees..."); (7) June 23, 2017, Ex. F, p. 8 ("If you are NOT in

agreement with the fees we now propose, we can enter into a consent decree in which we agree to

fixes and the court."); (8) June 26, 2017 (offering to settle on the merits and allow the court to

determine fees); (9) June 28, 2017 (offering to settle on the merits and allow the court to

determine fees); (10) July 12, 2017 (offering to settle on the merits and allow the court to

determine fees); (11) July 21, 2017 (offering to settle on the merits and allow the court to

determine fees); (12) July 26, 2018, 7:07 am, Ex. F, p. 15 (offering to settle on the merits and

allow the court to determine fees); (13) July 26, 2017 12:43 pm, , Ex. F, p. 19 (offering to settle

on the merits and allow the court to decide fees); (14) July 27, 2017, 1:32 pm, Ex. F, p. 20

(offering to settle on the merits and allow the court to determine fees); (15) July 27, 2017, 2:19

pm, Ex. F, p. 22 (offering to settle on the merits and allow the court to determine fees); (16) July

27, 2017, 2:53 pm, Ex. F, p. 23 (offering to settle on the merits and allow the court to determine

fees) (17) November 5, 2017, Ex. F, p. 24 (same); (18) November 17, 2017, Ex. F, p. 25 (same).

Plaintiff's attorneys made this offer no less than 18 separate times.  To summarize, Plaintiff's

counsel made repeated offers to resolve the case on the merits. Although Plaintiff's counsel made

a fee demand, this demand never held settlement on the merits hostage, as did the sanctioned

counsel in Goodman. Rather, Plaintiff's counsel always offered to let the court determine the fee

amount. Moreover, in every case where a fee demand is made, the vast majority of defendants

counter with a reasonable amount, then the parties haggle back and forth until an acceptable middle ground is reached. Not in this case.

Defendant and its counsel repeatedly outright refused to settle on the merits and allow the court to determine the fee amount. Instead, it was the Defendant who insisted that any agreement on the merits be conditioned on Plaintiff agreeing to Defendant's own fee offer. It was the Defendant and its attorney who held resolution of the case hostage unless Plaintiff and counsel concede to Defendant's fee offer - which was only a fraction of what the Defendant's attorney fees already were. On June 22, 2017, Ex. F, pp. 9, 10, Defendant's attorney wrote: "If we cannot agree on an amount, then it would seem that compiling lists and discussing them would be futile at this point. If we can agree on the $5K, then we can move forward on putting together a list.". On June 26, 2017, , Ex. F, pp. 16, 18, Defendant then **lowered** its fee offer from "$5k" to $4k". On June 27, 2017, , Ex. F, p. 17, Defendant again **lowered** its fee offer to $3500.00.  On July 27, 2017, , Ex. F, p. 21, the Defendant again lowered its fee offer to $2500.00. On July 27, 2017, Defendant's counsel reiterated that Defendant was only willing to pay $2500.00.

By the time Defendant made its first offer of only $5000,  Plaintiff's counsel had already expended considerable additional time in responding to Defendant's motion to dismiss and had incurred the additional fees of paying its expert to inspect the premises and generate a report. Moreover, a review of the timesheets submitted by Defendant's counsel at DE 60-1 reveals that Defendant's counsel had generated $11,466 in fees as of this time, with no out of pocket expenditures for expert or filing fees. By contrast, undersigned counsel had already paid the initial investigator fee of $800.00, the filing fee of $400, and the expert fee of $2050.00 for total expenses of $3250.00, leaving only $1750 for attorney fees. Thus, Defendant's own counsel

certainly knew that this fee offer was far from "reasonable".  From there, while this case continued to litigate, Defendant then continually LOWERED its fee offer and continued to refuse to simply let the Court decide. Defendant now seeks sanctions for what it claims to be bad faith negotiations on the part of Plaintiff's counsel. This is pure hypocrisy, for it was Defendant and Defendant's counsel who, at all times, were hostile and engaged in bad faith.

While Plaintiff's counsel repeatedly lowered its fee demand in an effort to  negotiate and reach a compromise, Defendant's counsel repeatedly rejected such efforts and instead continued to also lower its fee offer, thus going in the opposite direction making no good faith effort to compromise or settle. Ironically, Defendant now seeks more than $35,000 in fees for its own counsel, but insisted on conditioning any settlement on Plaintiff agreeing to counsel fees of only $2500.00.  Clearly, Mr. Winderman could have encouraged his client to settle long ago, but this would have meant that Mr. Widerman would have been paid less. Defendant's counsel's tactics and overt hostility are indicative of the probability that Mr. Widerman had no intention of mitigating his own fees, but instead only wanted to multiply them.

It is the Defendant and Defendant's counsel who engaged in the very conduct that was sanctioned in Goodman. While Plaintiff's counsel repeatedly offered to let the court decide the amount of fees, Defendant repeatedly rejected this offer outright and instead insisted that any settlement on the merits be conditioned on Plaintiff caving in to Defendant's fee offer, which started out paltry (a fraction of defendant's attorney fees at the time) and reduced continuously as the months wore on.  Contrary to Defendant's claims, it never made any reasonable offer and improperly conditioned any settlement on the Plaintiff conceding to Defendant's fee amount. In Payne v. Toys R Us, Inc., 15-80497, DE 34, pp. 3-4 (S.D. Fla. 12/232015) Exhibit G attached

16

hereto, one court stated that: "Indeed, an ADA defendant's early acceptance of liability can save judicial resources and reduce the defendant's exposure to adverse attorneys' fee awards. Even if a plaintiff declined to cooperate, a settlement offer that includes the requested injunctive relief would likely render unreasonable any attorneys' fees a plaintiff subsequently incurs."

Accordingly, Defendant always had the option of eliminating the accumulation of fees at a very early stage of this litigation, beginning with the offer of Plaintiff's counsel in April 2017 to let the Court decide the amount.

## C.  DEFENDANT CLAIMS ITEMS THAT DO NOT QUALIFY AS "COSTS"

The items for which Defendant seeks reimbursement reveal that Defendant labors under the misunderstanding of how "costs" are defined.  Defendant seeks $709.50 in "costs". These include photocopy charges, legal research, and mileage DE 66-1, p. 13., none of which are chargeable as "costs". Indeed, "costs" are narrowly defined by statute.  28 U.S.C. Section 1920.

The items sought as "costs" are more properly described as "litigation expenses".  See Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1190 (11th Cir. 1983)(discussing "litigation expenses" awardable in civil rights cases).

Whether Defendant's disguise of "litigation expenses" as "costs" is asserted in the same bad faith which governed its claims being made to this Court, Defendant is not entitled to any "litigation expenses" unless it satisfies the considerable burden set forth in 42 U.S.C. Section 12205 - which awards "litigation expenses" in civil rights cases.  In such a case, Defendant would have to prove to the Court that the plaintiff has run afoul of the standard set forth in Christiansburg - which requires a finding that Plaintiff's case was "frivolous, unreasonable, or without foundation".  As set forth above, the Plaintiff has not run afoul of Christiansburg and no

17

litigation expenses are awardable.

For the foregoing reasons, Defendant's costs are not awardable and should be denied.

**D.    SPECIFIC OBJECTIONS TO DEFENDANT'S ATTORNEY FEES**

Many items sought by Defendant's attorneys are objectionable.

First, Mr. Winderman seeks an hourly rate of $345. This is higher than hourly rates typically awarded to plaintiffs' counsel in this District. In Larkin v. Envoy Orlando Holdings, LLC, 6:15-cv-439-GAP, DE 44 (M.D. 12/21/15), attorney Jeannette Albo was awarded fees at the hourly rate of $300.00. See also Stringham v. EYM Diner, 6:13-cv-01204-ACC-KRS, DE 33 (M.D. Fla. 09/17/14) ($300.00).  Attorney Bacon has also been awarded as low as $300.00 for his hourly rate in the Middle District. See, e.g. Access For The Disabled, Inc. v. Osceola Enterprises of Kissimmee, Inc., 6:09-cv-1805-Orl (M.D. Fla. 7/1/2010). Scott Widerman has been an attorney only since 2002, yet he is seeking higher rates than Mr. Bacon receives, who has been an attorney since 1989. It is unknown what other, if any, Title III ADA experience Mr. Widerman has.  For this reason, Defendant's counsel hourly rate should be dramatically reduced.

Also, Defendant's counsel is claiming that it is entitled to a Lodestar multiplier. This is applicable to plaintiffs' counsel, who work on contingency and must incur all expenses out of their own pocket, sometimes without reimbursement or compensation. It does not apply to Mr. Widerman, who is paid by his client whether he wins or loses and is doubtless compensated as he goes. Mr. Widerman does not claim that the fees or hourly rates he seeks in this case are the actual fees or rates paid by his client. Rather, he indicates that he is seeking an improper Lodestar multiplier. For this reason alone, Defendant's attorney fees should be denied.

18

Moreover, Defendant is entirely responsible for multiplying fees.[4] This case could have

been over in April 2017, when Plaintiff's counsel offered to let the Court decide the fee amount.

This offer was made repeatedly and Defendant rejected this offer repeatedly. If any amount is

awardable, it should be no more than the fees incurred by Defendant's counsel up to April 25,

2017, when Plaintiff's counsel offered to settle the case on the merits and let the Court determine

the fee amount.

In the case at bar, Defendant rejected all overtures to keep fees at a minimum and the

multiplication of fees is solely the result of Defendant's own choosing.

Several entries are "block billing" - multiple unrelated tasks billed as one, warranting an

across the board reduction.  See Ceres Environmental Services, Inc. v. Colonel McCrary

Trucking, LLC, 476 Fed.Appx. 198, 203 (11th Cir. 2012).

## E.    DEFENDANT'S MOTION IS UNTIMELY

As set forth in Plaintiff's Motion To Strike , filed at DE 67, incorporated herein by

reference, Defendant's motion is untimely filed because the Appellate Court proceedings have

not yet concluded.

## F.    CONCLUSION

For the foregoing reasons, Defendant's motion for attorney fees and costs must be denied,

---

[4]Defendant argues, among other things, that Plaintiff's counsel "could have" agreed to a stay pending its motion to dismiss. In light of Mr. Widerman's obvious delay tactics and hostility, this would have been extremely imprudent. Moreover, ample case law holds that a stay is not proper pending disposition of a motion to dismiss. Gomez v. La Carretta Ent., Inc., 0:17-cv-61195-WPD, DE 24 (S.D. Fla. 10/13/17); Kennedy v. Batmasian, Case 9:15-cv-81353-KAM DE 38, (S.D. Fla. 02/26/2016); Reilly v. Amy 's Kitchen, Inc., No. 13-21525-C1V, 2013 WL 3929709, at * 1 (S.D. Fla. July 31, 2013). Indeed, this Court denied Defendant's motion on this issue at DE 23.

or greatly reduced.

Respectfully Submitted,

Thomas B. Bacon, P.A.
644 N. Mc Donald Street
Mt. Dora, FL
954-478-7811
fx 954-237-1990
tbb@thomasbaconlaw.com
Florida Bar. Id. No. 139262

By:__/s/ Thomas B. Bacon____
      Thomas B. Bacon, Esq.

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of

record this 23rd day of June, 2018.

/s/ Thomas B. Bacon